J-S35023-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| IAN BROWER PETRIE | : | |
| | : | |
| Appellant | : | No. 595 MDA 2025 |

Appeal from the Judgment of Sentence Entered March 31, 2025
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0000823-2023

BEFORE: OLSON, J., MURRAY, J., and LANE, J.

MEMORANDUM BY MURRAY, J.:          **FILED: FEBRUARY 27, 2026**

Ian Brower Petrie (Appellant) appeals from the judgment of sentence imposed following his negotiated guilty plea to one count each of rape of a child and indecent assault, and two counts of sexual abuse of children.[1] Appellant challenges his designation as a sexually violent predator (SVP) under the Sexual Offender Registration and Notification Act (SORNA), 42 Pa.C.S.A. §§ 9799.10-9799.95. After careful review, we affirm.

During his guilty plea hearing, Appellant acknowledged the following factual summary offered by the Commonwealth:

> Between [November 16, 2019, and July 4, 2021], [Appellant] created two separate videos of a victim child[, the younger sister of Appellant's then-paramour,] who was[,] at the time[,] approximately four or five years old. One of the videos depicted [Appellant] pulling down the victim's underwear and exposing her vagina and anus. The second video depicted [Appellant] putting

---

[1] 18 Pa.C.S.A. §§ 3121(c), 3126(a)(1), 6312(b).

his erect penis into the mouth of the victim[,] and the victim remained sleeping throughout the video.

N.T. (guilty plea), 6/26/24, at 5-6.

On June 26, 2024, Appellant entered a negotiated guilty plea to the above-described offenses. After Appellant underwent an assessment by the Sexual Offender Assessment Board (SOAB), the trial court conducted a combined SVP and sentencing hearing on March 31, 2025. During the hearing, the trial court heard testimony from Veronique Valliere, Psy.D. (Dr. Valliere), the psychologist who completed Appellant's SVP assessment. Dr. Valliere opined that Appellant meets the definition of an SVP. The victim's mother also offered testimony. At the conclusion of the hearing, the trial court designated Appellant as an SVP, subject to lifetime registration and notification requirements under SORNA. The trial court also sentenced Appellant, pursuant to the plea agreement, to an aggregate term of 14 to 35 years in prison.

Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court subsequently filed a Rule 1925(a) opinion.

Previously, public defender counsel William Bispels, Esquire (Attorney Bispels), represented Appellant for purposes of direct appeal. On August 6, 2025, Attorney Bispels filed in this Court a motion to withdraw as counsel and an accompanying brief pursuant to **Anders v. California**, 386 U.S. 738 (1967), and **Commonwealth v. Santiago**, 978 A.2d 249 (Pa. 2009). Upon review of Attorney Bispels's filings, however, we concluded Attorney Bispels

- 2 -

had not adequately complied with the procedural requirements for withdrawal. In particular, the record was devoid of evidence that Attorney Bispels had served Appellant with a copy of the **Anders** brief, motion to withdraw, or letter explaining Appellant's right to raise additional claims by proceeding *pro se* or by retaining private counsel. **See Commonwealth v. Petrie**, 595 MDA 2025, 2025 WL 3090136 (Pa. Super. filed Nov. 4, 2025) (unpublished memorandum at 3-4). We additionally concluded Attorney Bispels's **Anders** brief was substantively deficient, as the argument section lacked citation to relevant legal authority and failed to identify anything in the record that could arguably support Appellant's appeal. **See id.** (unpublished memorandum at 4-5). Accordingly, we denied Attorney Bispels's motion to withdraw from representation and ordered him to file either a proper **Anders** brief (with accompanying proofs of service reflecting service of the required documents to Appellant) or an advocate's brief. **See id.** (unpublished memorandum at 5). Thereafter, public defender counsel Deborah Lynn Bogert Brown, Esquire (Counsel), entered her appearance on behalf of Appellant.[2] Counsel has filed an advocate's brief on Appellant's behalf, and the Commonwealth has filed a new appellee's brief.

On appeal, Appellant raises the following issue for review:

Whether the evidence presented by the Commonwealth was insufficient to establish by clear and convincing evidence that [Appellant] has a mental abnormality or personality disorder that

_____

[2] From the record, it is unclear why Counsel entered her appearance in place of Attorney Bispels.

- 3 -

makes him likely to engage in predatory sexually violent offenses[?]

Appellant's Brief at 5.

Appellant argues the Commonwealth failed to establish, by clear and convincing evidence, that Appellant satisfied the criteria to be designated as an SVP. *See id.* at 13-18. Appellant claims the Commonwealth failed to establish that he had a history of predatory sexually violent behavior. *Id.* at 13-14. According to Appellant, Dr. Valliere did not testify that Appellant acted in a predatory manner. *Id.* at 14; *see also id.* (arguing that "[w]hile [Dr. Valliere] attempted to make speculative assumptions as to why [Appellant] maintained his relationship with his paramour, this testimony was ruled inadmissible."). Appellant also asserts his diagnosis of pedophilic disorder does not make him likely to commit predatory sexually violent offenses; instead, he argues, it simply makes him more likely to reoffend. *Id.* at 15-16. Further, Appellant contends the trial court impermissibly shifted the burden to Appellant when it considered the fact that Appellant did not present his own expert during the SVP hearing. *Id.* at 16-17.

Appellant challenges his SVP designation, which raises a challenge to the sufficiency of the evidence. ***Commonwealth v. Aumick***, 297 A.3d 770, 776-77 (Pa. Super. 2023) (*en banc*).

> [O]ur standard of review is *de novo* and our scope of review is plenary. A challenge to the sufficiency of the evidence to support an SVP designation requires the reviewing court to accept the undiminished record of the case in the light most favorable to the Commonwealth. The reviewing court must examine all of the Commonwealth's evidence without consideration of its

- 4 -

admissibility. A successful sufficiency challenge can lead to an outright grant of relief such as a reversal of the SVP designation…. We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied.

*Id.* (internal citations, quotation marks, and footnote omitted). We may not reweigh the evidence considered by the trial court. *See Commonwealth v. Meals*, 912 A.2d 213, 223 (Pa. 2006).

For context, we begin with a review of the definitions of certain key terms contained in SORNA. A "sexually violent predator" is defined under SORNA as

[a]n individual who committed a sexually violent offense under the laws of this Commonwealth or an attempt, conspiracy or solicitation to commit a sexually violent offense under the laws of this Commonwealth on or after December 20, 2012, who is determined to be a sexually violent predator under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses. …

42 Pa.C.S.A. § 9799.12. A "sexually violent offense" is any offense enumerated in section 9799.14, which was committed on or after December 20, 2012, and for which the individual was convicted. *Id.* § 9799.12; *see also id.* § 9799.14 (classifying rape of a child as a Tier III sexual offense, sexual abuse of children (18 Pa.C.S.A. § 6312(b)) as a Tier II sexual offense, and indecent assault (18 Pa.C.S.A. § 3126(a)(1)) as a Tier I sexual offense). Additionally, a "mental abnormality," for purposes of SORNA, is

[a] congenital or acquired condition of a person that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts

to a degree that makes the person a menace to the health and safety of other persons.

42 Pa.C.S.A. § 9799.12. SORNA defines "predatory" as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.*

This Court has summarized the "statutorily mandated and well-defined" procedure for determining SVP status:

Under revised Subchapter H of SORNA, after a person has been convicted of an offense listed in section 9799.14, the trial court orders an assessment by the SOAB. *See* 42 Pa.C.S.A. § 9799.24(a). The SOAB must assess all individuals convicted of sexually violent offenses to determine whether they should be classified as an SVP. *See id.* § 9799.24(b). When assessing whether a particular offender should be classified as an SVP, "the board shall establish standards for evaluations and for evaluators conducting the assessments." *Id.*

*Aumick*, 297 A.3d at 777 (footnote omitted).

Section 9799.24(b) details various mandatory (though non-exhaustive) factors for consideration during an SVP assessment:

(1) Facts of the current offense, including:

(i) Whether the offense involved multiple victims.

(ii) Whether the individual exceeded the means necessary to achieve the offense.

(iii) The nature of the sexual contact with the victim.

(iv) Relationship of the individual to the victim.

(v) Age of the victim.

(vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.

(vii) The mental capacity of the victim.

(2) Prior offense history, including:

(i) The individual's prior criminal record.

(ii) Whether the individual completed any prior sentences.

(iii) Whether the individual participated in available programs for sexual offenders.

(3) Characteristics of the individual, including:

(i) Age.

(ii) Use of illegal drugs.

(iii) Any mental illness, mental disability or mental abnormality.

(iv) Behavioral characteristics that contribute to the individual's conduct.

(4) Factors that are supported in a sexual offender assessment field as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24(b).

Following the assessment, the SOAB must submit a written report to the district attorney. *Id.* § 9799.24(d). Thereafter, the trial court must conduct a hearing to determine whether the Commonwealth established, by clear and convincing evidence, that the individual is an SVP. *Id.* § 9799.24(e).

This Court has explained,

[t]he trial court's inquiry at an SVP hearing is different from the SOAB's assessment. Whereas the SOAB member must consider the fifteen factors listed in section 9799.24(b), the trial court must determine whether the Commonwealth has proven by clear and

- 7 -

convincing evidence that the defendant is an individual who has a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses. An SVP assessment is not a trial or a separate criminal proceeding that subjects the defendant to additional punishment. SVP status, therefore, does not require proof beyond a reasonable doubt; rather, the court decides SVP status upon a show of clear and convincing evidence that the offender is, in fact, an SVP.

*Aumick*, 297 A.3d at 778-79 (internal citations, quotation marks, brackets, and paragraph break omitted).

Instantly, the trial court, in its opinion, summarized Dr. Valliere's testimony from the SVP hearing, and concluded that the Commonwealth clearly and convincingly established that Appellant meets the statutory definition of an SVP:

In conducting her evaluation, Dr. Valliere reviewed, *inter alia*, the trial record in this case, police records, prior criminal records, [a Child Protective Services] report, the [CyberTip] reports, the guilty plea colloquy, an investigation report by the [SOAB] investigator, Montgomery County Detective[s]' report, the presentence investigation by Berks County Adult Probation, and the statement accompanying [Appellant's] guilty plea.

… Based on her review of the records, Dr. Valliere opined that Appellant met the definition of a[n SVP] because he has "pedophili[]c disorder[,] which is a disorder of deviant sexual arousal where the individual is aroused to children without secondary sex characteristics." [Dr. Valliere] based this opinion on the fact that Appellant had sexually assaulted a child for at least two years before his arrest, [and] he maintained and sustained a collection of imagery that was sexual in nature and involved the sexual abuse of prepubescent children. [Appellant] also produced his own material by sexually abusing his paramour's little sister when she was around four years old by taking pictures and films of himself touching her when she was sleeping. Based on her evaluation, Dr. Valliere concluded that Appellant met the statutory criteria for an SVP designation.

On cross-examination, Dr. Valliere elaborated on her report, [indicting] that she reviewed Appellant's pre-sentence investigation report[,] which included some misconducts at the jail system, but she did not know the nature of those misconducts. Dr. Valliere also indicated in her report that Appellant's history of violence was unknown[,] but that she was aware his mother had a protection from abuse order[3] against Appellant. [Dr. Valliere] also listed in her report that she was made aware that Appellant's prior [Accelerated Rehabilitative Disposition] was revoked. Dr. Valliere went on to say that the disorder she diagnosed Appellant with was based in large part on the facts of this case and [the fact that Appellant] had [sustained] this pattern for over 6 months.…

Trial Court Opinion, 6/23/25, at 3-4 (footnote added; footnote citations omitted).

In addition, we highlight the following additional portions of Dr. Valliere's testimony. In defining pedophilic disorder, Dr. Valliere testified that the deviant sexual arousal to children without secondary sex characteristics must "be sustained for six or more months and the disorder has had to have harmed another person or disrupted one's own life." N.T. (SVP/sentencing), 3/31/25, at 7. As Dr. Valliere explained,

[t]he reason paraphilic disorders are considered to meet the statutory definition of mental abnormality is that they serve as the motivation for the offending. They are … considered to last a lifetime and can only be managed and are not curable. They motivate the individual[,] over their understanding of consequences to themselves or others or the law[,] to engage in the behavior and are related to risk of future recidivism.

*Id.* at 7-8.

Dr. Valliere opined that Appellant exhibits predatory behavior, as defined by SORNA. *Id.* at 8. Appellant is correct that the trial court sustained

---

[3] *See* Protection From Abuse Act, 23 Pa.C.S.A. §§ 6101-6122.

his objection to Dr. Valliere's assertion that "he maintained the relationship with his own paramour at least in part in order to gain access to this child." *Id.* at 8; *see also id.* at 9-14 (the parties and the court discussing the nature of the objection and whether there was a proper foundation to support Dr. Valliere's statement). However, contrary to Appellant's claims, this statement was not the sole reference to predatory behavior during Dr. Valliere's testimony. Prior to making the challenged statement, Dr. Valliere pointed to Appellant's creation of sexually explicit content involving a four-year-old child as indicative of predatory behavior. *Id.* at 8; *see also id.* at 14 (Dr. Valliere emphasizing that Appellant had access to the sleeping victim for a sufficient period of time in which to create the videos). Dr. Valliere also indicated that Appellant's diagnosis of pedophilic disorder led to her determination that Appellant is likely to engage in predatory sexually violent offenses. *Id.* at 37; *see also id.* at 35-36 (explaining the statutory definition of "predatory" is broad, and can be used to describe specific behavior even where no mental abnormality is present).

Upon review, we discern no error in the trial court's conclusion that the Commonwealth established, by clear and convincing evidence, that Appellant suffered from a mental abnormality (*i.e.*, pedophilic disorder) that made him likely to commit predatory sexually violent offenses, and demonstrated predatory behavior by his conduct in abusing the child victim by making sexually explicit videos over the course of two years. Moreover, though Appellant suggests the two recorded instances of abuse "could just as easily

have been spontaneous crimes of opportunity," the definition of "predatory" does not require that the perpetrator maintain a relationship with the victim <u>solely</u> to support victimization.  **See** 42 Pa.C.S.A. § 9799.12; **see also Commonwealth v. Grant**, 339 A.3d 367, 1101 EDA 2024 (Pa. Super. 2025) (unpublished memorandum at 8) (stating that the appellant's "suggestion that his abuse of [the minor victim] was merely the opportunistic exploitation of a family member overlooks the fact the definition of predatory does not require the relationship between the defendant and the victim exist solely to support or facilitate victimization.").[4]

Finally, Appellant's contention that the trial court impermissibly shifted the burden to him is belied by the record.  At the close of Dr. Valliere's testimony, the trial court explicitly acknowledged the Commonwealth's burden of establishing, by clear and convincing evidence, that Appellant qualifies as an SVP.  N.T. (SVP/sentencing), 3/31/25, at 38.  Before stating its conclusion on the record, the trial court made a passing statement that Appellant could have presented his own expert.  **Id.** at 41.  From the record, there is no indication that the trial court expected Appellant to counter the Commonwealth's evidence with an expert, or that it relied on the absence of a defense expert to Appellant's detriment.  Instead, the trial court concluded that, based on the evidence presented, the Commonwealth proved Appellant

---

[4] Unpublished memorandum decisions filed by this Court after May 1, 2019, may be cited for their persuasive value.  Pa.R.A.P. 126(b).

met the statutory definition of an SVP by clear and convincing evidence. *Id.* at 42.

Based upon the foregoing, we conclude the record adequately supports the trial court's determination that the Commonwealth presented clear and convincing evidence that Appellant met the statutory criteria to be classified as an SVP under SORNA. Accordingly, Appellant is not entitled to relief on his sole claim.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/27/2026